## The Scrantonian *v.* Brown, Appellant.

*Partnership—Dissolution—Release of retiring partner—Consideration —Act of April* 14, 1851, *P. L.* 612.

A contract releasing one member of a partnership by a creditor of the partnership must be based upon a good and lawful consideration in so far as past indebtedness is concerned, but this rule does not apply to any future indebtedness which may have been created after notice of dissolution of the partnership was given to the creditor.

Where on the trial of an issue which involves the distinction between past and future indebtedness, the court correctly distinguishes between the two classes in the general charge, but failed to do so in answers to points in which the distinction is not made, the failure to make such distinction in the answers is ground for reversal of the judgment.

The Act of April 14, 1851, P. L. 612, providing for the filing of the names and location of the members of a partnership in the office of the

prothonotary, applies only to persons who are actually members of the partnership, and does not apply to persons not members, nor preclude such persons from setting up the fact that no partnership existed.

Where one of the defendants sued as a partner is in fact not a partner and this fact is admitted by the other defendants, the court cannot be charged with error in permitting the plaintiff after the trial to enter a nol. pros. as to such defendant nunc pro tunc as of the time of trial.

*Partnership—Evidence—Call of party as upon cross-examination—Witness—Act of May 23, 1887, sec. 7, P. L. 158.*

Where in an action against three persons sued as partners the plaintiff calls one of the persons as upon cross-examination, under the Act of May 23, 1887, sec. 7, P. L. 158, the other defendants are not precluded from examining the witness as to anything legitimately growing out of his cross-examination. The court therefore commits error if it shuts off the offer of another of the defendants to examine the defendant witness without first ascertaining whether or not the question to be asked, and the further pursuit of the examination related to the testimony which he had given as upon cross-examination. The fact that the witness, by being called as for cross-examination is made a competent witness for the other party does not help the matter, for the other party may not wish to make him his own witness.

Argued March 5, 1908. Appeal, No. 9, Jan. T., 1908, by defendants, from judgment of C. P. Lackawanna Co., Sept. Term, 1905, No. 650, on verdict for plaintiff in case of Richard Little, trading as The Scrantonian, v. George Astwood, H. C. C. Astwood, Jr., Alamanzo Porter, John R. Sparks, David T. Brown and George W. Brown. Before RICE, P. J., PORTER, HENDERSON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Assumpsit against several persons as partners.

At the trial H. C. C. Astwood, one of the defendants, was called by the plaintiff as for cross-examination, and after he had testified he was examined by defendants' counsel as follows:

Mr. Comegys: "Q. We would like to ask the witness a question."

Mr. O'Malley: We object to that.

The Court: I sustain the objection, exception noted and bill sealed for the defendants. [6]

Mr. O'Malley: "Q. Where do you live?"

Mr. Dawson: We object to one of the defendants being called

as for cross-examination since the defense set up is that Alamanzo Porter, one of the defendants, was never a member of the firm of this copartnership, and, therefore, as to him, this man could not be called as for cross-examination, and we would like to have an offer as to what they proposed to prove, as we think the question of the defendant is advisable.

The Court: We overrule the objection, bill sealed and exception noted for the defendants. [7]

Plaintiff presented the followings points:

2. George W. Brown having admitted that he was a member of the Defender Publishing Company, the burden is upon him of convincing the jury by the fair weight of the testimony that he was released from the liability by the plaintiff in this case, and that this release was based upon a good and lawful consideration. *Answer:* I affirm this point. [1]

4. A contract releasing one member of a partnership by a creditor of a partnership must be based upon a good and lawful consideration. Hence, if the jury find from all the testimony that no good and lawful consideration passed directly from George W. Brown to the plaintiff for the alleged release by the plaintiff of George W. Brown, then the plaintiff is entitled to recover against him the same as against the other defendants. *Answer:* I affirm this point. [2]

The court charged in part as follows:

[It is my duty to instruct you, as a matter of law, that George W. Brown and Alamanzo Porter are not in a position to deny their partnership in the defendant firm.] [3]

[After much of the evidence was in it was admitted of record that the partnership had not been registered in the prothonotary's office as provided by the act of 1851. This act provides that on failure to so register a partnership will not be permitted, at the trial of a case against it in court, to plead the inclusion of the names of persons not members of the partnership. If a person is sued as a member of a firm, and he claims he was not a member, the law provides a way in which he can have that question settled for himself by proper proceedings in court; therefore, for the purpose of this case, George W. Brown

and Alamanzo Porter must be considered as partners to the end of January, 1905, when the firm ceased publishing the newspaper called " The Defender."

The defense of no partnership, as to these two men, falls for the reason that I have stated.  There is a difference, under the evidence, between the claims of Porter and George W. Brown.  Porter claims he never was a member of the firm; Brown admits he was a member until June, and his counsel have argued the case in part, upon the theory that Brown, although he might possibly be considered a partner up to January, 1905, was nevertheless released from all liability to the plaintiff after June, 1904.  But, in law, there is no difference between George W. Brown and Porter, so far as their being members of the partnership are concerned, and so far as their right is concerned to raise that question in this case, the jury must consider them as partners.  This brings the issue in this case down to a narrow compass.] [4]

Verdict and judgment for plaintiff for $1,239.68.  Defendants appealed.

*Errors assigned* were (1, 2, 3, 4) above instructions, quoting them; (5) in entering a noll. pros. as to Porter, and (6, 7) rulings on evidence, quoting the bill of exceptions.

*A. A. Vosburg,* with him *Charles W. Dawson,* for appellant.— The defendants should have been allowed to cross-examine the Astwoods, although they were called as for cross-examination: Corkery v. O'Neill, 9 Pa. Superior Ct. 335.

*E. N. Willard,* with him *Everett Warren, Henry A. Knapp, Charles P. O'Malley* and *B. F. Tinkham,* for appellee.

OPINION BY BEAVER, J., April 20, 1908:

In the case under review, it was sought to hold appellant as a partner with other parties interested in the publication of a newspaper known as "The Defender."  The appellant admitted his liability as a partner until June, 1904, when, as he alleged, he ceased to have any connection with the publication and so notified the plaintiff, when it was agreed that he (the appellant)

should not be held responsible for any indebtedness connected with the publication of "The Defender." The appellant admits, in his history of the case, that Porter, who was joined with him and others, as a partner, as defendant, never was a member of the partnership which published the paper. A verdict was obtained against all the defendants and, upon a motion for a new trial, a nol. pros. was entered as to Porter.

The several assignments of error raise the various questions involved, so that no further statement of the facts is necessary.

The first and second assignments of error are based upon the affirmation of the plaintiff's second and fourth points for charge, both of which rest upon the general principle, as stated therein, that "A contract releasing one member of a partnership by a creditor of a partnership must be based upon a good and lawful consideration." This statement of the law is correct, so far as past indebtedness is concerned, but does not apply to any future indebtedness which may have been created after notice of dissolution of the partnership was given to the creditor. The court distinguishes between past and future indebtedness in the general charge, but there is no distinction in the points which were affirmed, and although it is argued that the points related only to past indebtedness, that should have appeared, because, as we understand it, the claim was not only for indebtedness already incurred when the notice of the dissolution of the partnership was alleged to have been given, but for indebtedness which was incurred after that time. If this distinction had been observed in the points themselves, the answers would have been entirely correct. It is claimed, however, that the distinction was made in the general charge. It is true that the court correctly stated the rule in the general charge, but with the broad statement contained in the second and fourth points, which were affirmed without qualification, the jury were left in uncertainty and may have been misled. The distinction made in the charge should have been continued by a qualification in the answers to the points, so as to limit the necessity for a good and lawful consideration for a release to past indebtedness. For this reason, these assignments are sustained.

It was claimed in the course of the trial that none of the defendants could deny the partnership, for the reason that the thirteenth and fourteenth sections of the Act of April 14, 1851, P. L. 612, had not been complied with. The provisions of this act of assembly, however, as we view it, apply only to persons who are actually members of a partnership and who, if they fail to file "in the office of the prothonotary, in the county or counties where the said partnership is carried on, the names and location of the members of such partnership, with the style and name of the same, . . . . shall not be permitted in any suits or actions against them in any court, or before any justice of the peace or alderman in this commonwealth, to plead any misnomer or the omission of the name of any member of the partnership, or the inclusion of the names of persons not members of said partnership;" but this act does not apply to persons who are not members of a partnership and does not preclude them from setting up the fact that no partnership existed as a defense. We think the court was wrong in charging, as assigned for error in the third and fourth assignments, but inasmuch as Porter, who was not a member of the firm, is not complaining here and a nol. pros. was entered as to him later, on the application for a new trial, we cannot see that the appellant is injured, for he was admittedly a partner.

The fifth assignment relates to the order of the court in allowing the plaintiff "to enter nolle prosequi as to Alamanzo Porter nunc pro tunc as of the time of trial." This practice is distinctly sanctioned in Ganzer v. Fricke, 57 Pa. 316. The appellant was not injured, because he frankly states in his history of the case that Porter "never was a member of the partnership which published this paper."

Astwood, one of the defendants, was called by the plaintiff, as upon cross-examination. It is claimed by the appellant that, inasmuch as Porter was not a partner, he could not be called, because his testimony might affect him, but Porter is not complaining and the fact of his being a member of the partnership was the question in dispute and no one could have a better knowledge as to that fact than one of the partners.

The seventh section of the Act of May 23, 1887, P. L. 158,

upon which the right to call a party, as upon cross-examination, is based, is as follows:

"Section 7.  In any civil proceeding whether or not it be brought or defended by a person representing the interests of a deceased or lunatic assignor of anything or contract in action, a party to the record or a person for whose immediate benefit such proceeding is prosecuted or defended, or any other person whose interest is adverse to the party calling him as a witness, may be compelled by the adverse party to testify as if under cross-examination, subject to the rules of evidence applicable to witnesses under cross-examination, and the adverse party calling such witnesses shall not be concluded by his testimony, but such person so cross-examined shall become thereby a fully competent witness for the other party as to all relevant matters, whether or not those matters were touched upon in his cross-examination; and also, where one of several plaintiffs or defendants, or the person for whose immediate benefit such proceeding is prosecuted or defended, or such other person having an adverse interest, is cross-examined under this section, his coplaintiffs or codefendants shall thereby become fully competent witnesses on their own behalf as to all relevant matters, whether or not these matters were touched upon in such cross-examination."

It will be observed that there is nothing in this section which in any way limits the right of either party, when called as for cross-examination, to examine the witness as to anything to which his cross-examination relates.  Although we think Astwood was properly called as for cross-examination, the defendant was not precluded from examining him as to anything legitimately growing out of his cross-examination.  It was, therefore, error for the court, when the defendant proposed to ask him a question, to sustain the objection thereto, without finding out to what the question related.  It is very true, as we have said, in Corkery v. O'Neill, 9 Pa. Superior Ct. 335, as fairly outlined in the syllabus: "Where the defendant is called by the plaintiff for cross-examination, it is not error for the trial judge to refuse to permit defendant's endeavor to introduce his main defense by examination on matters which his

examination by plaintiff had not opened up," but it by no means follows that there can be no examination of the witness called as upon cross-examination, if that examination be limited to what legitimately grows out of the cross-examination. Indeed, the plain inference is quite the reverse.

The case under consideration affords a good illustration of the wrong which might be done if no examination were allowed under such circumstances. The witness, who was called as upon cross-examination, was without doubt liable for the plaintiff's claim. By his testimony in cross-examination, he might have sought to make both of the defendants liable with him for the entire claim of the plaintiff. His interest, therefore, was, in a measure, antagonistic to that of the other defendants. Surely they should have the right to inquire, within proper limits, of course, as to the truth of his statements and to pursue the inquiry, in order to bring out the whole truth in regard to the matter, so far and so far only as it was involved in his cross-examination. We think, therefore, the court was in error in shutting off the offer of the defendant to examine the witness, without first ascertaining whether or not the question to be asked and the further pursuit of the examination related to the testimony which he had given, as upon cross-examination. It is said that this has been the practice in Lackawanna county for a number of years, but we cannot sanction the practice, if it is not in accordance with law. There is nothing in the act of assembly which in any way limits the right of the adverse party to continue the examination of a witness who has been called by the other party, as upon cross-examination, and, as this case clearly shows, such a practice may result in gross injustice. The fact that the witness, by being called as for cross-examination, is made a competent witness for the other party, does not help the matter, for, as in the present case, the other party may not wish to make him his own witness. The sixth assignment is sustained.

Judgment reversed and a new venire awarded.